

**BAKER & HOSTETLER LLP**
Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Counsel for Plaintiffs
Michael Kors, L.L.C.;
Cartier International AG; and
Cartier, a division of Richemont North America, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL KORS, L.L.C., CARTIER
INTERNATIONAL AG, and CARTIER, a division
of Richemont North America, Inc.,

        Plaintiffs,

        -against-

TAI FOOK, INC., JOHN DOES, and JANE DOES,

        Defendants.

---

CIVIL ACTION NO.

15 CV _____

# COMPLAINT

Plaintiffs Michael Kors, L.L.C. ("MK"), Cartier International AG and Cartier, a division of

Richemont North America, Inc. (collectively "Cartier"), (MK, together with Cartier, collectively

"Plaintiffs") by and through their undersigned counsel, for their Complaint against Tai Fook, Inc.

("Tai Fook"), John Does, and Jane Does (Tai Fook together with John Does and Jane Does

collectively "Defendants") allege as follows:

## STATEMENT OF THE CASE

1.      Plaintiffs seek monetary and injunctive relief against Defendants for numerous causes of action, including but not limited to, (i) direct and contributory trademark counterfeiting, in violation of 15 U.S.C. § 1114; (ii) direct and contributory trademark infringement, in violation of 15 U.S.C. § 1114; (iii) direct and contributory false descriptions/false designations of origin, in violation of 15 U.S.C. § 1125; and (iv) knowingly permitting leased real property to be used for an unlawful trade or business, in violation of N.Y. Real Prop. L. § 231(2).

2.      New York City's Canal Street has long been a major distribution hub for counterfeit goods that are sold throughout the United States.  Wholesale and retail sales of counterfeit goods occur frequently and regularly from locations along Canal Street and its neighboring areas. The Plaintiffs in this case, and trademark holders in general, have been plagued by the sale and distribution of counterfeit goods at locations on Canal Street and its environs for years. To combat this illegal activity and protect their world-famous and valuable names, reputations and trademarks, Plaintiffs and other trademark holders have, at great expense, commenced and led enforcement efforts in the Canal Street area. They have worked with law enforcement in operations against the individuals and entities selling counterfeit goods bearing their trademarks. Arrests for trademark counterfeiting have been made routinely by the New York City Police Department and by other agencies all over Canal Street. The Mayor's Office of Special Enforcement for the City of New York has conducted numerous enforcement operations along Canal Street and the surrounding area against both the sellers of counterfeit goods and the property owners that lease them the space and thereby enable the ongoing sale of counterfeit merchandise.

3.     The John and Jane Doe Defendants in this action have sold, offered for sale and distributed counterfeit goods bearing the Plaintiffs' Federally Registered Trademarks (defined *infra.*) for years. Tai Fook, the owner of the property from where these sales have taken place, continues to allow its premises to be used as a safe haven and marketplace from which counterfeiters can sell their wares. Defendant Tai Fook apparently sanctions an endless stream of counterfeiters despite numerous notices from Plaintiffs. This revolving door of counterfeiters cannot be condoned and Tai Fook must be held accountable for its complicity in these illegal activities.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction over the subject matter of this civil action pursuant to 15 U.S.C. § 1051, et seq., 1114(1), § 1121 and 28 U.S.C. §§ 1331 and 1338.

5.     This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), since the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.     This Court may exercise personal jurisdiction over Defendants pursuant to § 301 of the New York Civil Practice Law and Rules ("CPLR"), because Defendants are domiciled within the State of New York.

7.     Alternatively, this Court may exercise personal jurisdiction over Defendants pursuant to CPLR § 302(a)(1), (2) and (4), because the acts about which Plaintiffs complain arise from Defendants' transaction of business within New York State and/or agreement to supply goods in New York State; Defendants' commission of a tortious act within New York State;

and/or Defendants' ownership, use or possession of real property situated within New York State.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims alleged by Plaintiffs occurred within the City, State and County of New York.

## THE PARTIES

9.      Plaintiff Michael Kors, L.L.C. is a Delaware Limited Liability Company with its principal place of business located at 11 West 42nd Street, New York, New York 10036.

10.     Plaintiff Cartier International AG, is a public limited company organized and existing under the laws of Switzerland, having its principal place of business at Hinterbergstrasse 22, 6330 Cham, Switzerland.

11.     Plaintiff Cartier, a division of Richemont North America, Inc., is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business located at 645 Fifth Avenue, New York, New York 10022.  Cartier, a division of Richemont North America, Inc., is the exclusive distributor of Cartier – branded products in the United States.

12.     John or Jane Doe 1 operates a store at 251A Canal Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

13.     John or Jane Doe 2 operates a store at 251B Canal Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or

stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

14.     John or Jane Doe 3 operates a store at 253A Canal Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

15.     John or Jane Doe 4 operates a store at 253B Canal Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

16.     John or Jane Doe 5 operates a store at 120B Lafayette Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

17.     John or Jane Doe 6 operates a store at 120C Lafayette Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

18.     John or Jane Doe 7 operates a store at 120D Lafayette Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

19.     John or Jane Doe 8 operates a store at 120E Lafayette Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location.

20.     John or Jane Doe 9 operates a store at 120F Lafayette Street, and has been doing business in the City and State of New York and has sold, offered for sale, manufactured and/or stored and distributed counterfeit goods bearing Plaintiffs' Federally Registered Trademarks at this location. (John and Jane Does 1-9 are hereinafter collectively referred to as the "John and Jane Doe Defendants.").

21.     Upon information and belief, Defendant Tai Fook is a New York corporation with its principal place of business at 8 Chatham Square, Rm. 408, New York, New York 10038. Upon information and belief, Tai Fook is the owner of the properties located at 251-253 Canal Street and 120 Lafayette Street, New York, New York, which are essentially contained within the same building.

22.     The identity of the various John Does and Jane Does is not presently known, and the Complaint will be amended, if appropriate, to include the name or names of said individuals when such information becomes available.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

I.     **PLAINTIFFS AND THEIR BUSINESSES**

A.     *Michael Kors*

23.     MK is a global luxury lifestyle brand led by renowned, award-winning designer Mr. Michael Kors.

24.     Since launching his namesake brand over 30 years ago, Michael Kors has featured distinctive designs, materials and craftsmanship with a jet-set aesthetic that combines stylish elegance and a sporty attitude. Mr. Kors' vision has taken the Company from its beginnings as an American luxury sportswear house to a global accessories, footwear and apparel company with a presence in approximately 100 countries.

25.     MK is the owner of the trade name "Michael Kors" which Plaintiff has used to identify itself and its products in the United States for over 30 years.

26.     MK is the owner of the entire right, title and interest in and to, *inter alia*, the valid, subsisting trademarks and uncanceled trademark registrations on the Principal Register of the United States Patent and Trademark Office which include, but are not limited to, the following:

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| MICHAEL KORS | June 4, 1996 | 1977507 | Ladies' clothing; namely, dresses, jackets, pants, skirts, shirts, blouses, shorts, sweaters, coats, swimwear. |
| MICHAEL KORS | April 1, 1997 | 2049326 | Clothing for use by women; namely, anoraks; aprons; ascots; babushkas; bandanas; bathrobes; belts; blazers; blousons; bodysuits; boleros; boots; boxer shorts; brassieres; briefs; caftans; camisoles; capes; caps; cardigans; chemises; clogs; fur coats; suit coats; corselets; culottes; earmuffs; galoshes; garter belts; girdles; gloves; nightgowns; halter tops; hats; headbands; hosiery; jeans; jogging suits; jumpers; jumpsuits; kerchiefs; kimonos; leggings; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; negligees; nightshirts; overalls; overshoes pajamas; panties; pantsuits; pantyhose; parkas; pedal pushers; peignors; pinafores; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; stockings; stoles; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; underpants; vests; vested suits; and warm-up suits; and, clothing for use by men; namely, |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | anoraks; ascots; bandanas; bathrobes; belts; blazers; boots; boxer shorts; briefs; capes; caps; cardigans; clogs; fur coats; suit coats; earmuffs; galoshes; gloves; hats; headbands; hosiery; jeans; jogging suits; kerchiefs; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; nightshirts; overalls; overshoes; pajamas; pantsuits; parkas; pedal pushers; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shorts; undershirts; athletic shoes; gym shorts; sweat shorts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; suits; suspenders; sweat pants; sweat shirts; t-shirts; trousers; tuxedos; vests; vested suits; and warm-up suits. |
| MICHAEL KORS | December 18, 2001 | 2520757 | Handbags, billfolds, credit card cases, key cases, and tote bags. |
| MICHAEL KORS | December 18, 2001 | 2520758 | Eyeglasses, eyeglass cases. |
| MICHAEL KORS | March 12, 2002 | 2547039 | Retail store services in the fields of clothing, jewelry and clothing accessories. |
| MICHAEL KORS | April 22, 2003 | 2708259 | Cosmetics; namely, body lotion, cologne, perfume, and shower gel. |
| MICHAEL MICHAEL KORS | April 11, 2006 | 3080631 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, carrying cases, namely, attaché cases; bags, namely, tote bags; luggage; suitcases; handbags; purses; wallets; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, t-shirts, tuxedos, vests, ties; undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear; footwear and headwear; belts. |
| MICHAEL KORS ISLAND | September 19, 2006 | 3146355 | Fragrance products, namely eau de parfum. |
| MICHAEL KORS | October 17, 2006 | 3160981 | Watches. |
|  | December 18, 2007 | 3356080 | Handbags and small leather goods, namely, wristlet bags. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| MK MICHAEL KORS | May 27, 2008 | 3438412 | Eyeglass frames, eyeglasses, sunglasses, eyeglass cases, eye shades, protective eye wear and eye wear for sports; handbags; men's and women's clothing, namely, dresses, skirts, blouses, pants, jackets, blazers, coats, raincoats, capes, ponchos, scarves, hats, gloves, sweaters, belts, hosiery, bathing suits, halter tops, socks, jeans, warm up suits, sweatshirts, sweatpants, leggings, shorts, slacks, sport coats, sport shirts, suits, T-shirts, tuxedos, vests, ties; undergarments for men and women, namely, boxer shorts, bras, bustiers, camisoles, nightgowns, nightshirts, pajamas, panties, undershirts, underwear, footwear and headwear; belts. |
| MK MICHAEL KORS | November 18, 2008 | 3535310 | Watches. |
| MICHAEL KORS | November 8, 2011 | 4052748 | Jewelry. |
| MICHAEL MICHAEL KORS | November 8, 2011 | 4052752 | Jewelry and watches. |
| MICHAEL KORS | May 14, 2013 | 4334410 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |
| MICHAEL MICHAEL KORS | May 14, 2013 | 4334409 | Protective cases, covers and carrying cases for mobile phones, portable media players, personal digital assistants, laptops and tablet computers. |

(hereinafter collectively referred to as the "MK Registered Trademarks"). Copies of the MK registrations, as listed on the U.S. Patent and Trademark Office website, are attached as Ex. A.

27.    MK is also the owner of any common law trademarks associated with its products.

28.    MK's Registered Trademarks are in full force and effect and have been used for years on and in connection with MK's merchandise.

29.    MK's Registered Trademarks and the goodwill of the business of MK in connection with which the MK Registered Trademarks are used has never been abandoned and are in full force and effect. MK intends to preserve and maintain its rights with respect to its Registered Trademarks.

B.   *Cartier*

30.    Cartier is a world-famous supplier of fine jewelry and luxury watches sold under the Cartier name and mark.

31.    Founded in 1847 by Louis-François Cartier, Cartier has built a reputation for fine craftsmanship in the jewelry field.  Through over 160 years of use, Cartier has built its Cartier name and mark to be synonymous with high-quality, well-crafted jewelry.  Today, the company offers for sale and sells a wide range of products including timepieces, fine jewelry, and accessories.  Cartier's commitment to innovation in design and function, as well as the use of only the finest materials, has brought it renown as a leading maker of luxury goods.

32.    Cartier owns the entire right, title and interest in and to, *inter alia*, the valid, subsisting trademarks and uncanceled trademark registrations on the Principal Register of the United States Patent and Trademark Office, which include, but are not limited to, the following:

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| CARTIER | December 12, 1944 | 0410701 | Perfume extracts, toilet water, face powders, rouges, lipsticks, mascara, eyebrow pencils, and perfumery. |
| CARTIER | January 9, 1945 | 0411239 | Precious-metal ware-namely, the following articles made, in whole or in part, of precious metals or plated with the same, viz combs and comb cases, jewel boxes and cases, hat ornaments, tie clips, fobs, charms, bracelets, watch bracelets and buckles therefore, not including watches, cuff links, collar buttons, shirt studs, waist coat buttons, lockets, brooches, hair ornaments, earrings, hat pins, jewelry clips, jewelry novelties, holders for cosmetics eyeglass cases, cigar and cigarette cases and boxes and snuff boxes, cigarette and cigar holders, pipes, cigar and cigarette lighters, humidors and ash trays, jewelry initials, commemorative and military and naval decoration medals and insignia, picture and mirror frames, fittings for traveling bags, handles, and ornaments for canes and umbrellas, bottle openers, pocket knives, envelope openers, wallets, money clips, perfume bottles, cocktail |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | mixers, desk sets, handbags, flatware and hollowwear trays, pitchers, bowls, vases, tea and coffee services, match boxes, pocket flasks, toilet articles, razor sets, key chains, finger rings, thimbles, check book covers, book marks, compasses, mesh bags, candlesticks, and for aquatic shells and parts thereof encrusted or otherwise ornamented with either or both precious metals and jewels. |
| CARTIER | January 9, 1945 | 0411240 | Articles of jewelry for personal wear and for precious-metal ware-namely, the following articles made, in whole or in part, of precious metals or plated with the same- viz, combs and comb cases, jewel boxes and cases, hat ornaments, tie e clips, fobs, charms, bracelets, watch bracelets and buckles therefor, not including watches, cuff links, collar buttons, shirt studs, waist coat buttons, lockets, brooches, hair ornaments , earrings, hat pins, jewelry clips, jewelry novelties, holders for cosmetics, eyeglass cases, cigar and cigarette cases and boxes and cigar and cigarette lighters, snuff boxes, cigarette and cigar holders, pipes, humidors, and ash trays, jewelry initials, commemorative and military and naval decoration medals and insignia, picture and mirror frames, fittings for traveling bags, handles and ornaments for canes and umbrellas, bottle openers, pocket knives, envelope openers, wallets, money clips, perfume bottles, cocktail mixers, desk sets, handbags, flatware and hollowware, trays, pitchers, bowls, vases, tea and coffee services, match boxes, pocket flasks, toilet articles, razor sets, key chains, finger rings, thimbles, check book covers, book marks, compasses, mesh bags, candlesticks, candelabras, jewelry cases, bonbon containers, crosses, rosaries and buckles, and for aquatic shells and parts thereof encrusted or otherwise ornamented with either or both precious metals and jewels. |
| CARTIER | January 9, 1945 | 0411241 | Cigarette and cigar cases, snuffboxes, cigarette and cigar holders, pipes, non-Pyrophoric lighters, match boxes, ash trays and humidors. |
| CARTIER | February 13, 1945 | 0411975 | Watches, clocks and wrist watches with wrist straps and bracelets attached for securing the same on the wrist of the wearer, and traveling clocks and watches with covers of leather, fabric and the like for protecting them while traveling. |
| CARTIER | May 15, 1945 | 0413802 | Combination pocketbooks and shopping bags, wallets, billfolds, key cases, card cases, brief cases, photograph cases, leather clock cases, traveling cases, overnight bags, both fitted and unfitted, purses and pocketbooks. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| CARTIER | June 5, 1945 | 0414295 | Playing cards, bridge sets backgammon sets, checkers, flip coins, and put and take tops and spinners. |
| CARTIER | June 12, 1945 | 0414433 | Glass table and bar ware, flower bowls, vases and perfume bottles all made of glass. |
| CARTIER | June 12, 1945 | 0414434 | Glass table and bar ware, flower bowls, vases and perfume bottles all made of glass. |
| CARTIER | June 12, 1945 | 0414435 | Combination pocketbooks and shopping bags, wallets, billfolds, key cases, card cases, leather clock cases, traveling cases, and overnight bags, both fitted and unfitted. |
| CARTIER | June 19, 1945 | 0414604 | Writing and letter paper-namely, letterheads, correspondence cards, envelopes with and without return address, envelope openers, ink stands, desk sets, ungraduated rulers, blotters, desk pads, desk calendars covers therefor, address books, writing cases, memorandum books, pads, loose-leaf covers and binders and fountain pens. |
| CARTIER | June 19, 1945 | 0414605 | Invitations, announcements, place cards, calling cards, business cards, birthday cards, Christmas cards, anniversary cards, sympathy cards, acknowledgement cards and printed and engraved notices of business and social nature. |
| CARTIER | July 31, 1945 | 0415184 | Opera glasses, lorgnettes, magnifying glasses, thermometers, reading glasses graduated rulers and tape measures. |
| CARTIER | July 9, 1963 | 0752301 | Containers and cases for perfume extracts, toilet waters, face powders, rouges, lipsticks, mascara, eyebrow pencils, and perfumery. |
| CARTIER | October 22, 1963 | 0758858 | Lead-pencils, magazine lead-pencils and pen holders. |
| CARTIER | October 29, 1963 | 0759009 | Purses and pocketbooks. |
| CARTIER | October 29, 1963 | 0759201 | Watches and clocks. |
| CARTIER | October 29, 1963 | 0759202 | Articles of jewelry for personal wear, not including watches, and the following goods of solid or plated silverware-namely, table flatware and hollow-ware, toilet articles, candelabra, bonbon-cases, jewelry cases, crosses, rosaries, and buckles. |
| CARTIER | August 25, 1970 | 0897507 | Designing jewelry and watches to order and/or specification of others, and leasing articles of jewelry. |
| CARTIER | August 25, 1970 | 0897537 | Retail jewelry store services, jewelry mail order services, jewelry appraisal services, and jewelry brokerage services. |
| CARTIER | December 14, 1971 | 0925672 | Retail jewelry store services, jewelry mail order services, jewelry appraisal services, and jewelry brokerage services. |
| LOVE BRACELET | February 25, 1975 | 1005286 | Jewelry-namely, bracelets. |
| TANK | March 11, 1975 | 1006321 | Watches. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
|  | March 11, 1975 | 1006323 | Pens and pencils made of precious metals. |
| CC | September 6, 1977 | 1072698 | Glassware, porcelain and earthenware. |
|  | November 29, 1977 | 1078675 | Jewelry-namely, bracelets. |
| CC | February 28, 1978 | 1086588 | Smoking tobacco for use in pipes, cigarettes and cigars, lighters. |
|  | December 19, 1978 | 1109166 | Writing pads, calendars, notebooks, diaries, address books and telephone books, all made of leather or imitation leather. |
| CC | January 9, 1979 | 1110821 | Desk diaries and pocket diaries, credit card cases, checkbook holders, billfolds, wallets, document holders, writing cases, clutches, pocket secretaries, coin purses, address books, money clips, attaché cases, vanity cases, shoulder bags, portfolios, suitcases, overnight bags, courier bags, coach bags, utility bags, tote bags, handbags, key cases, card cases, briefcases, photograph cases and traveling cases, jewelry boxes and jewelry rolls. |
| CC | March 6, 1979 | 1114482 | Articles of jewelry, watches and clocks. |
| MUST | April 27, 1982 | 1194240 | Spectacle cases. |
| MUST | August 10, 1982 | 1204625 | Scarves and belts. |
| CARTIER | February 1, 1983 | 1226301 | Retail consumer goods mail order services. |
| CARTIER | February 1, 1983 | 1226302 | Retail consumer goods mail order services. |
| MUST | February 15, 1983 | 1227483 | Paper and cardboard luggage identification tags, stationery-namely, writing paper, envelopes, diaries, diary refills, pens, pencils and pen refills. |
| MUST | March 8, 1983 | 1229141 | Perfume, eau de toilette and cologne. |
| MUST | March 15, 1983 | 1231140 | Cups, tumblers and ice buckets. |
| MUST | March 29, 1983 | 1232971 | Lighters, cigar cutters, cigar and cigarette cases and gas refills for cigarette lighters. |
| MUST | April 19, 1983 | 1235220 | Articles of jewelry, watches, clocks, key chains and money clips made of precious metals or coated therewith. |
| LES MUST | May 17, 1983 | 1238771 | Repairing jewelry, watches, pens, leather goods and lighters. |
| CC | August 16, 1983 | 1248728 | Retail consumer goods mail order services in connection with the sale of precious jewelry, watches and other time pieces, picture frames, lighters, and all types of leather goods, excluding clothing and footwear, pens, tableware, glassware, porcelain and earthenware. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| SANTOS | August 23, 1983 | 1248792 | Eau de toilette. |
| SANTOS DE CARTIER | August 23, 1983 | 1248793 | Eau de toilette. |
| MUST | September 6, 1983 | 1250299 | Playing cards. |
| MUST DE CARTIER | September 27, 1983 | 1252058 | Perfume and eau de toilette. |
| SANTOS DE CARTIER | October 4, 1983 | 1252656 | Eau de toilette. |
| CC | August 28, 1984 | 1291824 | Key rings and scarves. |
| MUST DE CARTIER | August 28, 1984 | 1291984 | Watches, clocks, jewelry, lighters made in whole or in part of precious metal. |
| CC | October 16, 1984 | 1300379 | Eyeglasses and eyeglass frames. |
| MUST DE CARTIER | October 23, 1984 | 1301395 | Eyeglasses and eyeglass frames. |
| CC | December 4, 1984 | 1308000 | Pens, pencils, articles of stationery-namely, writing paper, envelopes, cards, pads, address books, desk calendars, diaries, and memorandum books. |
| CARTIER | April 9, 1985 | 1329299 | Eyeglasses and eyeglass frames. |
| SANTOS | June 25, 1985 | 1344284 | Watches. |
| PANTHERE | August 13, 1985 | 1353952 | Watches. |
| PANTHERE DE CARTIER | October 15, 1985 | 1365478 | Watches. |
|  | November 26, 1985 | 1372423 | Bracelets, chains, jewelry, chokers (jewelry), dog tags (military identification), necklaces, tags and identification. |
| PANTHERE DE CARTIER | December 17, 1985 | 1375400 | Soaps, perfumery, essential oils, cosmetics, hair lotions, dentifrices. |
| PANTHERE | January 28, 1986 | 1379957 | Soaps, perfumery, essential oils, cosmetics, hair lotions and dentifrices. |
| SANTOS DE CARTIER | February 18, 1986 | 1383324 | Cigarette lighters. |
|  | March 4, 1986 | 1385178 | Goblets, cups, salt and pepper shakers, candlestick holders and trays all of precious metal, bowls, buckets, serving dishes and ashtrays of crystal and precious metal. |
| SANTOS | April 22, 1986 | 1390909 | Belts and buckles. |
| SANTOS DE CARTIER | April 29, 1986 | 1391539 | Watches. |
|  | May 27, 1986 | 1394813 | Cigarette lighters made of precious metals and cigarette lighters made of non-precious metals. |
|  | August 5, 1986 | 1403670 | Perfume. |
| SANTOS DE CARTIER | November 25, 1986 | 1418046 | Hair and body shampoo. |
| PASHA | January 27, 1987 | 1426187 | Soaps, perfume and non-medicated hair lotions, dentifrices. |
| PASHA | July 7, 1987 | 1446380 | Pens. |
| PASHA DE CARTIER | July 7, 1987 | 1446381 | Pens. |
| MUST DE | August 4, 1987 | 1450281 | Perfumed body cream, body milk and powder. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| CARTIER | | | |
| CARTIER | September 29, 1987 | 1459285 | Scarves. |
| CC | October 20, 1987 | 1461824 | Sterling silver and silver plated bells and picture frames. |
| CARTIER | January 26, 1988 | 1474214 | Porcelain dinnerware. |
| PASHA | April 5, 1988 | 1483326 | Watches. |
| SANTOS | November 8, 1988 | 1511630 | Eyeglasses and eyeglass frames. |
| SANTOS DE CARTIER | November 8, 1988 | 1511631 | Eyeglasses and eyeglass frames. |
| MUST | November 15, 1988 | 1512552 | Eyeglasses and eyeglass frames. |
| C | April 18, 1989 | 1535215 | Bracelets, rings, earrings and cufflinks. |
| MUST | May 23, 1989 | 1540487 | Money clips made in whole or in part of leather, credit card cases, wallets, clutch purses, coin purses, attaché cases, vanity cases sold empty, shoulder bags, handbags, brief case type portfolios, suitcases, overnight bags, luggage, tote bags, key cases, brief cases, travelling cases, purses, passport holders , cosmetic bags sold empty and garment bags for travel. |
| TANK | July 4, 1989 | 1546139 | Eyeglasses, sunglasses, eyeglass frames and eyeglass cases. |
| SANTOS | September 26, 1989 | 1557920 | Pens. |
| PANTHERE | October 10, 1989 | 1559622 | Eyeglasses, sunglasses and eyeglass frames. |
|  | January 2, 1990 | 1574779 | Checkbook covers, luggage, suitcases, attaché cases, briefcase-portfolios, cosmetic cases sold empty, traveling cases, pocketbooks, business and credit card holders, purses, wallets and jewelry cases for travel, all made of leather or imitation leather. |
| C | June 26, 1990 | 1603762 | Leather handbags and attaché cases. |
| SANTOS | December 18, 1990 | 1627897 | After shave lotion, hair and body shampoo and personal deodorant. |
|  | November 3, 1992 | 1728791 | Toilet soap for personal use, perfumes, cosmetics, namely, lipstick, blush, eyeliner, mascara and powder,  hair lotions, dentifrices. |
| PANTHERE | March 9, 1993 | 1756765 | Pens. |
| PANTHERE | August 17, 1993 | 1788151 | Ladies' handbags, purses, wallets, credit card holders. |
| PANTHERE DE CARTIER | September 28, 1993 | 1795660 | Eyeglasses. |
| PASHA | September 5, 1995 | 1916128 | Ladies handbags, purses, wallets, credit card holders, and valises. |
| TRINITY | October 17, 1995 | 1927987 | Jewelry made of precious metal or coated therewith. |
| TORTUE | January 16, 1996 | 1948372 | Jewelry, precious stones, watches and clocks. |
| C | May 21, 1996 | 1974661 | Key holders and decorative boxes made from common metals, stationary, writing paper and envelopes, diaries, playing cards, pens and pencils. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| TROIS ANNEAUX | March 10, 1998 | 2141994 | Ashtrays, badges, jewelry boxes, candlesticks, jewelry cases, cigarette cases, and watch cases, coffee and tea services, cuff-links, powder compacts, salt and sugar containers, table plates, serving trays, all these made of precious metals or coated therewith, jewelry, precious gem stones, watches, clocks, and chronometers. |
| TRINITY | May 4, 1999 | 2243233 | Watches. |
| HAPPY BIRTHDAY | May 25, 1999 | 2247421 | Leather goods, namely, rucksacks, handbags, and travelling bags trunks and suitcases. |
| DECLARATION | October 5, 1999 | 2282678 | Skin soaps, perfumery, namely, perfume, cologne, eau de toilette, after shave, personal deodorants, essential oils for personal use. |
|  | February 29, 2000 | 2322769 | Watches and jewelry. |
| PANTHERE | May 2, 2000 | 2346941 | Jewelry. |
| PANTHERE DE CARTIER | May 23, 2000 | 2351631 | Jewelry. |
| CC | July 18, 2000 | 2367933 | Jewelry and watch repair. |
|  | March 20, 2001 | 2436100 | Chronometers, watches and clocks. |
| DECLARATION | December 11, 2001 | 2516842 | Boxes and cases for watches, jewelry, and cigarettes made of precious metal, ashtrays, coffee and tea services, candlesticks, cuff-links, pill-boxes, powder compacts sold empty, salt and sugar containers, trays for household purposes, all these made of precious metal or coated therewith, jewelry, precious gem stones, chronometers, clocks and watches. |
|  | March 12, 2002 | 2547693 | Writing instruments, namely, fountain pens, ball-point pens, pencils and pencil holders, felt-tip pens, roller-balls and markers. |
| HAPPY BIRTHDAY | December 24, 2002 | 2666131 | Rings, bracelets, earrings, necklaces, brooches, watches, chronometers and clocks. |
| CARTIER | January 6, 2004 | 2801764 | Books and magazines in the field of applied arts, art, horology, jewelry. |
| TANK | October 18, 2005 | 3006779 | Jewelry, such as bracelets, brooches, charms, cuff-links, earrings, necklaces and rings. |
| PANTHERE | January 17, 2006 | 3043022 | Diaries and writing instruments. |
| Pasha | July 11, 2006 | 3114431 | Precious metals and their alloys and goods in precious metals or coated therewith, namely, boxes of precious metal for watches and jewelry and watch straps; jewelry; precious stones; horological and chronometric instruments, namely, watches, chronometers, and clocks. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
|  | October 24, 2006 | 3162410 | Jewelry, namely, bracelets, watches, rings, charms, earrings, dog tag type pendants, cuff links, belt buckles made of precious metal. |
|  | January 16, 2007 | 3199115 | Metal money clips, works of art, namely, sculptures and figures of common metal, key rings of common metal, spectacles, sunglasses, spectacle frames, spectacle cases, magnifying glasses, cuff links, tie pins, rings, bracelets, earrings, necklaces, brooches, watches, chronometers, wall clocks, watchbands, boxes of precious metal for watches and jewelry, clothing, namely, footwear, headwear, belts, scarves, ties, sashes for wear. |
|  | February 20, 2007 | 3211038 | Horologic and chronometric instruments, namely, watches. |
|  | February 20, 2007 | 3211039 | Horologic and chronometric instruments, namely, watches. |
|  | August 21, 2007 | 3282738 | Horologic and chronometric instruments, namely, watches. |
|  | August 21, 2007 | 3282739 | Horologic and chronometric instruments, namely, watches. |
|  | August 21, 2007 | 3282846 | Horologic and chronometric instruments, namely, watches. |
|  | August 21, 2007 | 3282847 | Horologic and chronometric instruments, namely, watches. |
|  | September 18, 2007 | 3293732 | Horologic and chronometric instruments, namely, watches. |
| *santos de Cartier* | May 27, 2008 | 3436191 | Paper and cardboard goods, namely, stationery, office articles in the nature of pens, pencils, felt-tip pens, mechanical pencils, ballpoint pens, paperweights, blotting paper holders, letter trays, waste paper baskets, agendas, file folders, letter paper, envelopes, and business cards, |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | printed matter in the nature of catalogues and product guides in the fields of fashion, jewelry/horlogerie, leather goods, writing instruments and fragrances, playing cards, document holders, desk pads, photograph stands, book covers, leather or imitation leather goods, namely, suitcases, travelling bags, wallets, change purses, clutch bags, handbags, traveling cases, caskets, sets, trunks and suitcases, fur articles, namely, fur skins and fur pelts, umbrellas, ready-made or made-to-measure clothing for men, women and children, namely, coats, raincoats, suits, jackets, shirts, trousers, dresses, skirts, skirt suits, nightwear, underwear, lingerie, swimming costumes, handkerchiefs, ties, foulards, scarves, woolen clothing, namely, suits, sweaters and hats, stockings, socks, gloves, belts, hats, caps, bonnets, berets, shoes, slippers, sandals and boots. |
|  | November 4, 2008 | 3527643 | Metal key rings, metal clips for notepapers and cards, art works of common metals, namely, sculptures and figurines, spectacles, sunglasses, spectacle frames, spectacle cases, magnifying glasses, jewelry, cuff links, tie pins, rings, bracelets, earrings, necklaces, brooches, buckles of precious metals for watchstraps, buckles of precious metals for leather watchstraps, watches, chronometers, clocks, watch bands, boxes of precious metal for watches and jewelry, pens, fountain pens, ballpoint pens, pencils, propelling pencils, felt-tip pens, rollerball pens, markers, paint brushes, sealing wax, cases and boxes for writing instruments, pen ink cartridges and pen ink refills, writing paper, writing pads, index cards, visiting cards, envelopes, diaries, calendars, paperweights, rubber erasers, pencil sharpeners, paper cutters, holders for pens and pencils, pictures, engravings, leatherwear, namely, briefcases, traveling bags, toiletry cases sold empty, make-up bags sold empty, key cases, leather or imitation leather wallets, document folders in the form of wallets, handbags, rucksacks, travelling bags, rolling suitcases and rolling travel bags, valises, trunks and suitcases, satchels, purses, name card cases, credit card cases and business card cases, leather straps for handbags and luggage, umbrellas, parasols and walking sticks, whips, harness and saddlery, scarves, belts and ties, lighters for smokers, and smokers' articles, namely, cigarette cases, ashtrays, cigarette holders, and pipe stands. |
| PASHA DE | January 6, 2009 | 3557455 | Jewelry and horological instruments. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| CARTIER | | | |
| LOVE | June 16, 2009 | 3637776 | Soaps, perfumery, essential oils, cosmetics, hair lotions, eyeglasses, sunglasses, eyeglass frames and cases, magnifying glasses, mobile phone straps, goods of precious metals and coated therewith, namely, cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, and key rings, watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry, money clips, pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, roller ball pens, document markers, pouches, cases and boxes for writing instruments, writing inks and pen ink refills, diaries, calendars, paperweights, paper knives, pen and pencil holders, leatherwear, namely, briefcases, traveling luggage sets, unfitted vanity cases, and key cases, goods made of leather and imitations of leather, namely, attaché-cases, wallets, handbags, backpacks, traveling bags, wheeled bags, trunks, suitcases, purses, name card cases, credit card cases, and pouches, umbrellas, clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats, hosiery, jackets, pullovers, pajamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, belts, braces, gloves, mufflers, scarves, shawls, ties, bow ties, boots, shoes, slippers, caps, and hats. |
|  | April 20, 2010 | 3776794 | Jewelry, namely, rings, bracelets, charms, earrings, made of precious metals. |
| CARTIER | June 29, 2010 | 3810967 | Digital, electronic, optical and magnetic devices, apparatus and instruments, namely, apparatus for data recording, and transmission or reproduction of data, blank electronic and digital storage media, computer storage devices in the nature of flash drives and usb hardware in the nature of usb keys, adaptors, devices and instruments for data and media recording and storage, in the nature of memory cards, magnetic and optical discs, telephone apparatus, instruments and equipment, namely, telephone housings and telephone headsets, cellular telephones and mobile telephones, personal digital assistants and electronic agendas, apparatus and instruments for reading and playing data including audio and/or video data, namely, portable electronic devices for reading text in digital format, handheld electronic digital video playing devices, and portable cd players, computers, laptop computers, and mp3 players, |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | mobile music, radio and video playing units, digital alarm clocks, radio relay and transmission units, digital photo frames for displaying digital photographs and video clips, downloadable electronic magazines, catalogues and brochures in the field of luxury goods and arts/culture, computer programs for video games and computer game playing devices in the nature of home video game consoles, screen saver software, software for creating computer screen wallpaper and backgrounds, computer peripherals, namely, mouse mats and computer mice, cameras. cellular and mobile telephone straps and decorative items and accessories for cellular and mobile telephones, personal digital assistants, electronic agendas, data recording and storage media, devices and instruments, cameras, computers and mobile music and video playing apparatus, namely, handheld electronic digital video playing devices, portable cd players, and mp3 players, cases, bags and pouches specially designed for use with telephones, computers, cameras, gps instruments, data recording and storage media, devices and instruments, compact discs, dvds, cd-roms, floppy discs and all computer related hardware and peripherals. |
| *Cartier* | August 10, 2010 | 3832004 | Leather and imitation leather goods, namely, suitcases, traveling bags, briefcases, wallets, change purses, clutch bags, handbags, chests in the nature of luggage and suitcases, sets of traveling bags, trunks and suitcases, skins, umbrellas, small leather bags in the nature of sleeves and pouches for merchandise packaging. |
| TRINITY | October 19, 2010 | 3864480 | Watches and clocks. |
| must de *Cartier* | December 21, 2010 | 3892773 | Articles of leather or of imitation leather not included in other classes, namely, valises, travelling bags, wallets, change purses, pouches, handbags, cases, chests being a type of traveling trunk, portmanteaus, trunks and suitcases, animal skins, hides and pelts, namely coverings of fur skins; umbrellas. |
|  | January 4, 2011 | 3898366 | Horologic and chronometric instruments, namely, watches. |
|  | March 15, 2011 | 3932980 | Eyeglasses, sunglasses, eyeglass frames. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
|  | July 17, 2012 | 4173552 | Spectacles, sunglasses, spectacle frames. |
| *Cartier* | July 24, 2012 | 4178047 | Jewelry and watches. |
| CARTIER | July 24, 2012 | 4178048 | Watches. |
| | August 28, 2012 | 4197020 | Jewelry and watches; retail store services featuring jewelry and watches; online retail store services featuring jewelry and watches. |
|  | October 16, 2012 | 4223802 | Leather and imitations of leather; goods made of leather and imitations of leather, namely, valises, wallets, change purses, pouches, handbags, clutch bags, suitcases, credit card cases, coin purses, key cases, travel document wallets, and attaché cases; animal skins; trunks and travelling bags; umbrellas, parasols and walking sticks; whips, harness and saddlery. |
| TRINITY | December 25, 2012 | 4263072 | Diaries; writing instruments. |
|  | January 29, 2013 | 4281248 | Jewelry; precious stones; precious metals and their alloys; pearls; cuff links; tie clips; rings; earrings; necklaces; brooches; charms; key rings of precious metal; works of art of precious metal; jewelry cases; boxes of precious metal; horological and chronometric instruments; watches; chronometers; clocks; small clocks; watch cases, bands, chains, springs or glasses; statues or figurines of precious metal; cases or presentation cases for timepieces; medals; jewelry for computers; jewelry items for bags; electronic catalog services and web-based catalog services featuring jewelry, precious stones and precious metals provided via communication media for retail services. |
| JUSTE UN CLOU | February 19, 2013 | 4290694 | Jewelry; precious stones; precious metals and their alloys; pearls; cuff links; tie clips; rings; earrings; necklaces; brooches; charms; key rings; works of art of precious metal; jewelry cases; boxes of precious metal; horological and chronometric instruments; watches; chronometers; clocks; small clocks; watch cases, bands, chains, springs or glasses; key rings of precious metal; statues or figurines of precious metal; cases or presentation cases for timepieces; medals; jewelry for computers; jewelry items for bags; electronic catalog services and web-based catalog services |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | | | featuring jewelry, precious stones and precious metals provided via communication media for retail services. |
| | June 4, 2013 | 4345177 | Jewelry. |
|  | February 18, 2014 | 4483522 | Watches. |
|  | February 25, 2014 | 4487142 | Watches. |
|  | July 1, 2014 | 4557845 | Perfumery products and toiletries for non-medical use, namely perfumes, perfume oils, Eau-de-cologne, toilet water, moisturizing and perfumed creams and lotions, cosmetic preparations for skin care; deodorants for personal use, antiperspirants, pre-shave and after-shave lotions and creams Spectacles, spectacle frames and spectacle cases; personal digital assistant; cellular telephone; electronic agenda; digital photo frame; mice and mouse pads; decorative charms and ornaments for cellular telephones; cases, bags and pouches specially adapted for holding or carrying telephones; instruments and media for storing and recording data, namely, electronic data recorders and blank USB flash drives; jewelry; works of art of precious metal; jewelry cases and caskets; boxes of precious metals; watches, wall clocks, small clocks, key rings being trinkets or fobs of precious metal; statues or figurines being statuettes of precious metal; cases for watches and clocks; decorative ornaments of precious metal in the nature of jewelry that can also be affixed to computers; decorative ornaments of precious metal in the nature of jewelry that can also be affixed to bags., Paper, cardboard; cardboard boxes, paper and plastic bags, envelopes and paper and plastic pouches for packaging; wrapping paper; albums for photographs, agendas, agenda covers, pads being stationery; stationery, namely, paper sheets, writing or drawing books, calendars; booklets in the field of jewelry and watches; stationery covers, namely, check book |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
|  |  |  | covers, protective covers for books; office requisites, namely, documents files; announcement cards being stationery; writing paper, envelopes being stationery; cards, namely, announcement cards, anniversary cards, blank cards; business cards; printed signs of paper or cardboard; bookends, bookmarks, page markers, passport holders, desk pads, book covers, document folders in the form of wallets, non-textile labels, namely, mailing labels; stationery, namely, paper bows for gift wrap; money clip., Leather and imitations leather; handbags, travel bags, backpacks; satchels, school bags and satchels, beach bags, shopping bags of canvas, leather, and textile, garment bags for travel, leatherware, namely,  traveling cases; sports bags, diaper bags, wheeled bags, wallets, purses, wallets including card holders, briefcases, attaché cases, document cases; leatherware, namely, key cases; tidies, namely, trays of leather for personal objects; traveling trunks; cases and boxes intended for toiletry articles sold empty; clutch bags being evening handbags; leather straps, boxes of leather of leather board,  hat boxes of leather, umbrella covers, umbrella sticks, walking stick and umbrella handles, suitcase handles, collars for animals , leashes for animals, namely, animal carriers; small bags for men and women and bags being envelopes and pouches of leather for packaging; jewelry pouches of textile material sold empty, Clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats and stoles, hosiery, jackets, pullovers, pyjamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, braces, mufflers, sashes for wear, suspenders, raincoats, dresses, skirt suits, nightwear, underwear, lingerie, swinming costumes, foulards, stockings, socks, bonnets, berets; clothing, namely, belts; clothing, namely, gloves; scarves, shawls, neckties, bow ties; headwear, caps and hats, Retail store services, online store services, mail order services, and electronic catalog services featuring cosmetics, perfumes, optical goods, usb flash drives, mouse pads, portable telephone straps, jewelry, works of arts, timepieces, watches, precious stones, precious metals, writing instruments, agendas, stationery, luggage, small leather goods, bags, clothing, clothing accessories, scarves, smokers' articles. |

| TRADEMARK | REGISTRATION DATE | REGISTRATION NUMBER | GOODS |
|---|---|---|---|
| | September 23, 2014 | 4608158 | Watches. |

(hereinafter collectively referred to as the "Cartier Registered Trademarks") (the MK Registered Trademarks together with the Cartier Registered Trademarks are collectively referred to as "Plaintiffs' Registered Trademarks"). Copies of the Cartier registrations, as listed on the U.S. Patent and Trademark Office website, are attached as Ex. B.

33. Cartier is also the owner of any common law trademarks associated with its products.

34. Cartier's Registered Trademarks are in full force and effect and have been used for decades on and in connection with Cartier's merchandise.

35. Cartier's Registered Trademarks and the goodwill of the business of Cartier in connection with which the Cartier's Registered Trademarks are used have never been abandoned and are in full force and effect. Cartier intends to preserve and maintain its rights with respect to its Registered Trademarks.

II.     **DEFENDANTS AND THEIR BUSINESSES**

A.     *John and Jane Doe Defendants*

36. Upon information and belief, the John and Jane Doe Defendants have infringed, continue to infringe and threaten to further infringe Plaintiffs' Registered Trademarks by manufacturing, distributing and selling counterfeit merchandise. The counterfeit products which are being manufactured, distributed and sold by the John and Jane Doe Defendants bear copies of the Plaintiffs' Registered Trademarks. The display of such counterfeit and infringing products by

the John and Jane Doe Defendants is an unauthorized public display of products bearing the Plaintiffs' Registered Trademarks. The marketing of such counterfeit and infringing products by the John and Jane Doe Defendants is an unauthorized distribution of copies of products bearing the Plaintiffs' Registered Trademarks.

37.     Long after Plaintiffs' use and registration of Plaintiffs' Registered Trademarks, the John and Jane Doe Defendants, on information and belief, commenced the manufacture, distribution, and sale of merchandise bearing counterfeits and infringements of Plaintiffs' Registered Trademarks as those trademarks appear on Plaintiffs' products and as shown in the U.S. Trademark Registrations attached to this Complaint as Exs. A and B.

38.     Upon information and belief, the activities of the John and Jane Doe Defendants complained of herein constitute willful and intentional infringement of Plaintiffs' Registered Trademarks, are in total disregard of Plaintiffs' rights, and were commenced and have continued in spite of the John and Jane Doe Defendants' knowledge that the use of any of Plaintiffs' Registered Trademarks, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiffs' rights.  The use by the John and Jane Doe Defendants of copies of Plaintiffs' Registered Trademarks has been without Plaintiffs' consent, is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that the goods sold by the John and Jane Doe Defendants are authorized, sponsored, or approved by Plaintiffs when, in fact, they are not.

B.     ***Tai Fook***

39.     Tai Fook is the owner of real properties located at 251-253 Canal Street and 120 Lafayette Street, New York, New York 10013, which are situated on the corner of Canal Street and Lafayette Street in the borough of Manhattan. 251-253 Canal Street actually consists of four

separate store fronts known as 251A Canal Street, 251B Canal Street, 253A Canal Street, and 253B Canal Street.  120 Lafayette Street actually consists of six separate store fronts known as 120A Lafayette Street, 120B Lafayette Street, 120C Lafayette Street, 120D Lafayette Street, 120E Lafayette Street, and 120F Lafayette Street.  Upon information and belief, 251-253 Canal Street and 120 Lafayette Street are all within one building owned by Tai Fook. (251-253 Canal Street and 120 Lafayette Street are collectively referred to hereinafter as the "Property").

**251 – 253 Canal Street**

     **253B**          **253A**          **251B**          **251A**

**120 Lafayette Street  A-F**

40.     Upon information and belief, Tai Fook has owned the Property continuously since February 1987.

41.     Since as early as 2011, Tai Fook has had actual, specific knowledge that tenants or subtenants at the Property have been using the Property as a base of operations from which to sell counterfeit trademarked goods.

42.     Tai Fook has turned a blind eye to the activities of the John and Jane Doe Defendants on their Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiffs' Registered Trademarks are routinely sold.

C.     *251A Canal Street*

43.     On December 10, 2011, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251A Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 2 MK wallets, 7 MK watches and 8 Cartier watches.

44.     On January 20, 2012, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the December 10, 2011 civil seizure of counterfeit merchandise at 251A Canal Street.

45.     On April 25, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251A Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 102 MK handbags.

46.     On May 10, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the April 25, 2013 civil seizure of counterfeit merchandise at 251A Canal Street.

47. On August 22, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251A Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 36 MK handbags, 17 MK wallets, 34 pieces of MK jewelry and 6 pieces of Cartier jewelry.

48. On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 251 Canal Street and requested a meeting with Tai Fook's counsel.

49. On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

50. On October 13, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing. While at 251A Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for thirty U.S. Dollars ($30.00).

51. On or about October 30, 2014, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the October 13, 2014 evidential purchase made at 251A Canal Street.

52. On November 8, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251A Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 175 MK handbags and 75 MK wallets.

53. On November 13, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 251A Canal Street.

54.     On February 28, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 251A Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for twenty U.S. Dollars ($20.00).

55.     On March 8, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 251A Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for forty U.S. Dollars ($40.00).

D.      *251B Canal Street*

56.     On January 25, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 251B Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for sixty U.S. Dollars ($60.00).

57.     On February 17, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 251B Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for forty-five U.S. Dollars ($45.00).

58.     On March 14, 2013, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the February 17, 2013 evidential purchase made at 251B Canal Street.

59.     In April 2013, Plaintiffs' counsel and Tai Fook's counsel exchanged correspondence with regards to ongoing sale of counterfeit merchandise at 251B Canal Street.

60.     On April 25, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251B Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 146 pieces of MK jewelry and 21 pieces of Cartier jewelry.

61.     On May 10, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the April 25, 2013 civil seizure at 251B Canal Street.

62.     On June 13, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251B Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 263 pieces of Cartier jewelry.

63.     On June 27, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the June 13, 2013 civil seizure at 251B Canal Street.

64.     On July 2, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 251B Canal Street.

65.     On October 5, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251B Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 116 pieces of MK jewelry, 26 MK handbags, 11 MK wallets and 94 pieces of Cartier jewelry.

66.     On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 251 Canal Street and requested a meeting with Tai Fook's counsel.

67.     On March 26, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 251B Canal Street seizing a significant quantity of counterfeit merchandise

including, but not limited to, 20 MK handbags, 31 MK wallets, 64 pieces of MK jewelry and 6 pieces of Cartier jewelry.

68.     On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

69.     On April 30, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the March 26, 2014 civil seizure at 251B Canal Street.

70.     On May 7, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Petition Commercial Holdover for 251B Canal Street.

71.     On June 2, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 251B Canal Street.

72.     On September 19, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 251B Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit Cartier bracelet for fifty U.S. Dollars ($50.00).

73.     On or about October 30, 2014, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the September 19, 2014 evidential purchase made at 251B Canal Street.

74.     On November 13, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 251B Canal Street.

75.     On December 22, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 251B Canal

Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for twenty U.S. Dollars ($20.00).

76.     On January 7, 2015, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the December 22, 2014 evidential purchase made at 251B Canal Street.

77.     On January 14, 2015, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Termination which they indicated they had sent to their tenant at 251B Canal Street.

78.     On February 2, 2015, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 251B Canal Street.

E.     ***253A Canal Street***

79.     On June 13, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 253A Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 69 MK handbags and 9 MK tags.

80.     On June 27, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the June 13, 2013 civil seizure of counterfeit merchandise at 253A Canal Street.

81.     On July 2, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice of Termination that they indicated they had sent to their tenant at 253A Canal Street.

82.     On August 22, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 253A Canal Street seizing a significant quantity of counterfeit merchandise

including, but not limited to, 14 Cartier watches, 34 MK watches, 20 MK wallets, 23 MK handbags and 100 MK tags.

83.    On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 253 Canal Street and requested a meeting with Tai Fook's counsel.

84.    On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

85.    On August 4, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Stipulation of Settlement that they entered into with their tenant at 253A Canal Street in which the tenant agreed not to engage in the sale of counterfeit merchandise.

86.    On January 7, 2015, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of a purchase of a counterfeit item from 253A Canal Street on December 22, 2014. This purchase involved a counterfeit item bearing trademarks other than those of the Plaintiffs.

87.    On January 28, 2015, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 253A Canal Street.

88.    On March 2, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 253A Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a pair of counterfeit MK earrings for fifteen U.S. Dollars ($15.00).

89.     On March 8, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 253A Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for forty U.S. Dollars ($40.00).

F.     ***253B Canal Street***

90.     On December 15, 2010, Plaintiffs conducted a civil seizure of counterfeit merchandise at 253B Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 186 Cartier watches.

91.     On or about January 13, 2011, Plaintiffs' counsel sent a letter to Tai Fook Corp., 251-253 Canal Street, New York, New York 10013, and Yu-Chau Lau of Tai Fook Inc., 219 Canal Street, New York, New York 10013, notifying them of the December 15, 2010 civil seizure at 253B Canal Street.

92.     On or about March 4, 2011, Plaintiffs' counsel sent a letter to Yu-Chau Lau of Tai Fook Inc., 219 Canal Street, New York, New York 10013, notifying them of the December 15, 2010 civil seizure at 253B Canal Street.

93.     On March 22, 2011, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 253B Canal Street.

94.     On June 13, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 253B Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 23 MK tags, 124 MK handbags and 7 MK belts.

95.    On June 27, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the June 13, 2013 civil seizure at 253B Canal Street.

96.    On July 8, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 253B Canal Street.

97.    On October 5, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 253B Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 25 MK handbags, 6 pieces of MK jewelry, 28 MK watches, 27 MK wallets, 57 MK tags and 3 Cartier bracelets.

98.    On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 253 Canal Street and requested a meeting with Tai Fook's counsel.

99.    On March 26, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 253B Canal Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 98 MK handbags, 8 MK wallets, 2 MK belts and 173 MK tags.

100.    On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

101.    On April 30, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the March 26, 2014 civil seizure of counterfeit merchandise at 253B Canal Street.

102.    On May 7, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Petition Commercial Holdover for 253B Canal Street.

103.    On June 2, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 253B Canal Street.

104.    On September 26, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 253B Canal Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK wallet for forty U.S. Dollars ($40.00).

105.    On or about October 30, 2014, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the September 26, 2014 evidential purchase made at 253B Canal Street.

106.    On November 13, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 253B Canal Street.

G.    *120B Lafayette Street*

107.    On December 20, 2011, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120B Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 100 Cartier watches.

108.    On February 2, 2012, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the December 20, 2011 civil seizure at 120B Lafayette Street.

109.    On November 10, 2012, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for sixty U.S. Dollars ($60.00).

110.    On December 12, 2012, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for forty-five U.S. Dollars ($45.00).

111.    On February 17, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for forty-five U.S. Dollars ($45.00).

112.    On March 4, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for thirty-five U.S. Dollars ($35.00).

113.    On or about March 11, 2013, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the February 17, 2013 evidential purchase made at 120B Lafayette Street.

114.    On March 26, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 120B Lafayette Street.

115.    On September 17, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for sixty-five U.S. Dollars ($65.00).

116.    On October 3, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for twenty-five U.S. Dollars ($25.00).

117.    On October 5, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120B Lafayette Street seizing 26 MK watches.

118.    On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 120 Lafayette Street and requested a meeting with Tai Fook's counsel.

119.    On March 26, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120B Lafayette Street seizing 22 MK watches.

120.    On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

121.    On April 30, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the March 26, 2014 civil seizure at 120B Lafayette Street.

122.    On January 7, 2015, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of a civil seizure conducted at 120B Lafayette Street on November 8, 2014. This civil seizure involved counterfeit items bearing trademarks other than those of the Plaintiffs.

123.    On January 14, 2015, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 120B Lafayette Street.

124.    On February 28, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for thirty-five U.S. Dollars ($35.00).

125.    On March 1, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120B Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK watch for thirty-five U.S. Dollars ($35.00).

H.    *120C Lafayette Street*

126.    On or about June 28, 2012, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of a purchase of a counterfeit item from 120C Lafayette Street on June 12, 2012. This purchase involved a counterfeit item bearing trademarks other than those of the Plaintiffs.

127.    On July 13, 2012, Tai Fook's counsel served a Ten Day Notice of Termination to its tenant at 120C Lafayette Street.

128.    On February 17, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120C Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for forty-five U.S. Dollars ($45.00).

129.    On or about March 11, 2013, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the February 17, 2013 evidential purchases made at 120C Lafayette Street.

130.    On March 26, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 120C Lafayette Street.

131.    On April 10, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120C Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for twenty U.S. Dollars ($20.00).

132.    On April 25, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120C Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 60 MK handbags.

133.    On May 15, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the April 25, 2013 civil seizure at 120C Lafayette Street.

134.    On June 4, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 120C Lafayette Street.

135.    On August 7, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of a July 31, 2013 purchase of counterfeit items from 120C Lafayette Street. This purchase involved a counterfeit item bearing trademarks other than those of the Plaintiffs.

136.    On August 13, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice of Termination which they indicated they had sent to their tenant at 120C Lafayette Street.

137.    On August 22, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120C Lafayette Street seizing 19 MK handbags and 5 MK wallets.

138.    On September 17, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 120C Lafayette Street the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK wallet for twenty U.S. Dollars ($20.00).

139.    On October 5, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120C Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 26 MK watches, 130 MK handbags, 38 MK wallets and 37 MK tags.

140.    On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 120 Lafayette Street and requested a meeting with Tai Fook's counsel.

141.    On March 26, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120C Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 53 MK handbags.

142.    On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

143.    On April 30, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the March 26, 2014 civil seizure of counterfeit merchandise at 120C Lafayette Street.

144.    On May 7, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Petition Commercial Holdover for 120C Lafayette Street.

145.    On June 12, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a copy of a Stipulation of Settlement entered into by Tai Fook and its tenant at 120C Lafayette Street in which the tenant agreed not to sell any counterfeit goods.

146.    On July 20, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120C Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a pair of counterfeit MK earrings for twelve U.S. Dollars ($12.00).

147.    On September 19, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120C Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for thirty U.S. Dollars ($30.00).

148.    On October 30, 2014, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the September 19, 2014 evidential purchase made at 120C Lafayette Street.

149.    On November 14, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a copy of the Surrender Agreement that they had entered into with their tenant at 120C Lafayette Street.

150.    On March 1, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120C Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made two evidential

purchases of a counterfeit MK handbag for forty U.S. Dollars ($40.00) and a pair of counterfeit MK earrings for fifteen U.S. Dollars ($15.00).

I.   *120D Lafayette Street*

151.   On December 15, 2010, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120D Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 135 Cartier watches.

152.   On or about January 11, 2011, Plaintiffs' counsel sent a notice letter to Tai Fook Corp., 251-253 Canal Street, New York, New York 10013, and Yu-Chau Lau of Tai Fook Inc., 219 Canal Street, New York, New York 10013, notifying them of the December 15, 2010 civil seizure of counterfeit merchandise at 120D Lafayette Street.

153.   On February 10, 2011, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice of Termination that they indicated they had sent to their tenant at 120D Lafayette Street.

154.   On March 21, 2011, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 120D Lafayette Street.

155.   On or about June 28, 2012, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of purchases of counterfeit items from 120D Lafayette Street on May 15, 2012 and May 30, 2012. These purchases involved counterfeit items bearing trademarks other than those of the Plaintiffs.

156.   In late July 2012, Tai Fook's counsel notified Plaintiffs' counsel that they had entered into a Surrender Agreement with their tenant at 120D Lafayette Street.

157.    On February 17, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.   While at 120D Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for forty-five U.S. Dollars ($45.00).

158.    On or about March 11, 2013, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the February 17, 2013 evidential purchase made at 120D Lafayette Street.

159.    On March 26, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 120D Lafayette Street.

160.    On August 7, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the purchase of a counterfeit item from 120D Lafayette Street on July 31, 2013. This purchase involved a counterfeit item bearing trademarks other than those of the Plaintiffs.

161.    On August 13, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice of Termination that they indicated they had sent to their tenant at 120D Lafayette Street.

162.    On August 22, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120D Lafayette Street, seizing a significant quantity of counterfeit merchandise including, but not limited to, 60 MK handbags, 25 MK wallets, 33 pieces of MK jewelry and 10 pieces of Cartier jewelry.

163.    On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 120 Lafayette Street and requested a meeting with Tai Fook's counsel.

164.    On March 26, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120D Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 60 MK handbags, 12 MK watches, 44 pieces of MK jewelry and 9 Cartier bracelets.

165.    On April 14, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120D Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a pair of counterfeit MK sunglasses for twenty U.S. Dollars ($20.00).

166.    On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

167.    On April 30, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the March 26, 2014 civil seizure of counterfeit merchandise at 120D Lafayette Street.

168.    On May 7, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Petition Commercial Holdover for 120D Lafayette Street.

169.    On May 14, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120D Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK change purse for fifteen U.S. Dollars ($15.00).

170.    On June 2, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 120D Lafayette Street.

171.    On March 2, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120D Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK change purse for twenty U.S. Dollars ($20.00).

J.      *120E Lafayette Street*

172.    On December 15, 2010, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120E Lafayette Street seizing 111 Cartier watches.

173.    On or about January 11, 2011, Plaintiffs' counsel sent a notice letter to Tai Fook Corp., 251-253 Canal Street, New York, New York 10013, and Yu-Chau Lau of Tai Fook Inc., 219 Canal Street, New York, New York 10013, notifying them of the December 15, 2010 civil of counterfeit merchandise seizure at 120E Lafayette Street.

174.    On February 10, 2011, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice of Termination which they indicated they has sent to their tenant at 120E Lafayette Street.

175.    On March 21, 2011, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 120E Lafayette Street.

176.    On February 2, 2012, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of a civil seizure at 120E Lafayette Street on December 20, 2011. This seizure involved counterfeit goods bearing trademarks other than those of the Plaintiffs.

177.    On April 10, 2013, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing. While at 120E Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for thirty U.S. Dollars ($30.00).

178.    On April 25, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120E Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 111 MK handbags, 1 MK belt, 1 piece of MK jewelry, 495 MK tags and 52 Cartier watches.

179.    On May 15, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the April 25, 2013 civil seizure at 120E Lafayette Street.

180.    On June 4, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice to Cure which they indicated they had sent to their tenant at 120E Lafayette Street.

181.    On June 27, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of a civil seizure of counterfeit merchandise at 120E Lafayette Street on June 13, 2013. This seizure involved counterfeit goods bearing trademarks other than those of the Plaintiffs.

182.    On July 2, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Ten Day Notice of Termination which they indicated they had sent to their tenant at 120E Lafayette Street.

183.    On August 2, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 120E Lafayette Street.

184.    On August 22, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120E Lafayette Street seizing 10 MK wallets.

185.    On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 120 Lafayette Street and requested a meeting with Tai Fook's counsel.

186.    On March 26, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120E Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 34 MK handbags, 159 pieces of MK jewelry and 86 pieces of Cartier jewelry.

187.    On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

188.    On April 30, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the March 26, 2014 civil seizure of counterfeit merchandise at 120E Lafayette Street.

189.    On May 7, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Petition Commercial Holdover for 120E Lafayette Street.

190.    On May 22, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel advising that the tenant at 120E Lafayette Street surrendered possession of the store.

191.    On May 23, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 120E Lafayette Street.

192.    On September 19, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120E Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made two evidential purchases of counterfeit MK handbags for twenty-five U.S. Dollars ($25.00) and ten U.S. Dollars ($10.00) respectively.

193.    On October 13, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120E Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of counterfeit MK handbag for forty U.S. Dollars ($40.00).

194.    On October 30, 2014, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the September 19, 2014 evidential purchase made at 120E Lafayette Street.

195.    On October 30, 2014, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the October 13, 2014 evidential purchase made at 120E Lafayette Street.

196.    On February 28, 2015, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120E Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK wallet for fifteen U.S. Dollars ($15.00).

K.    *120F Lafayette Street*

197.    On June 23, 2012, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120F Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 6 MK wallets and 5 MK handbags.

198.    On or about June 28, 2012, Plaintiffs' counsel sent a letter to Tai Fook's counsel notifying them of the June 23, 2012 civil seizure at 120F Lafayette Street.

199.    On December 19, 2012, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120F Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit MK handbag for thirty U.S. Dollars ($30.00).

200.    On April 25, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120F Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 78 MK handbags and 43 pieces of MK jewelry.

201.    On May 15, 2013, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the April 25, 2013 civil seizure at 120F Lafayette Street.

202.    On June 4, 2013, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Termination which they indicated they has sent to their tenant at 120F Lafayette Street.

203.    On August 22, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120F Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 40 MK handbags, 28 pieces of MK jewelry, 37 MK tags and 21 Cartier bracelets.

204.    On October 5, 2013, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120F Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 184 pieces of MK jewelry, 30 MK handbags and 35 pieces of Cartier jewelry.

205.    On March 13, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel to advise that the sale of counterfeit merchandise was still ongoing at 120 Lafayette Street and requested a meeting with Tai Fook's counsel.

206.    On March 17, 2014, Plaintiffs dispatched an investigator to the Property to conduct an assessment as to whether or not counterfeiting was ongoing.  While at 120F Lafayette Street, the investigator observed counterfeit merchandise being offered for sale and made one evidential purchase of a counterfeit Cartier bracelet for thirty U.S. Dollars ($30.00).

207.    On March 26, 2014, Plaintiffs conducted a civil seizure of counterfeit merchandise at 120F Lafayette Street seizing a significant quantity of counterfeit merchandise including, but not limited to, 85 MK handbags, 50 pieces of MK jewelry and 9 pieces of Cartier jewelry.

208.    On April 23, 2014, Plaintiffs' counsel met with Tai Fook's counsel to discuss the revolving door of counterfeiting taking place at the Property.

209.    On April 30, 2014, Plaintiffs' counsel sent an email to Tai Fook's counsel notifying them of the March 26, 2014 civil seizure of counterfeit merchandise at 120F Lafayette Street.

210.    On May 7, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Notice of Petition Commercial Holdover for 120F Lafayette Street.

211.    On June 2, 2014, Tai Fook's counsel sent an email to Plaintiffs' counsel attaching a Surrender Agreement that they had entered into with their tenant at 120F Lafayette Street.

## FIRST CAUSE OF ACTION

### TRADEMARK COUNTERFEITING AGAINST
### JOHN AND JANE DOE DEFENDANTS
### 15 U.S.C. § 1114

212.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

213.    The John and Jane Doe Defendants have knowingly advertised, promoted, distributed, sold and offered for sale goods bearing counterfeit versions of Plaintiffs' Registered Trademarks from the Property.

214.    The John and Jane Doe Defendants' use of counterfeit versions of Plaintiffs' Registered Trademarks in connection with the advertisement, promotion, distribution, sale and offer for sale of goods that do not originate from Plaintiffs is likely to cause confusion, mistake and deception among consumers that the counterfeit goods originate from, are sponsored by, or associated with, Plaintiffs.

215.    The John and Jane Doe Defendants' misconduct constitutes the intentional and willful use of counterfeit versions of Plaintiffs' Registered Trademarks in connection with the sale, offering for sale, or distribution of goods, in violation of 15 U.S.C. §§ 1114(1).

216.    The John and Jane Doe Defendants' acts constitute trademark counterfeiting in violation of 15 U.S.C. 1114.

217.    Upon information and belief, in committing these wrongs, the John and Jane Doe Defendants intentionally and willfully intended to trade on the goodwill associated with Plaintiffs' Registered Trademarks.

218.    Upon information and belief, in committing these wrongs, the John and Jane Doe Defendants acted willfully within the meaning of 15 U.S.C. § 1117(c)(2).

219.    Upon information and belief, the John and Jane Doe Defendants have made and will continue to make substantial profits to which they are not entitled in law or equity.

220.    Upon information and belief, the John and Jane Doe Defendants intend to continue their infringing acts, unless restrained by this Court.

221.    The John and Jane Doe Defendants' acts damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

222.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting the John and Jane Doe Defendants from using Plaintiffs' Registered Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from the John and Jane Doe Defendants all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by the John and Jane Doe Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SECOND CAUSE OF ACTION

### TRADEMARK INFRINGEMENT AGAINST JOHN
### AND JANE DOE DEFENDANTS
### 15 U.S.C. 1114

223.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

224.    Plaintiffs' Registered Trademarks are nationally recognized, including within the Southern District of New York, as being affixed to goods and merchandise of the highest quality.

225.    The registrations embodying Plaintiffs' Registered Trademarks are in full force and effect and Plaintiffs have authorized responsible manufacturers to produce, and vendors to sell, merchandise with these trademarks.

226.    The John and Jane Doe Defendants' unauthorized use of Plaintiffs' Registered Trademarks in interstate commerce and advertising constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' goods and are of the same quality as that assured by Plaintiffs' Registered Trademarks.

227.    The John and Jane Doe Defendants' infringing use of Plaintiffs' Registered Trademarks is without Plaintiffs' permission or authority and is in total disregard of Plaintiffs' rights to control their trademarks.

228.    The John and Jane Doe Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiffs have produced, sponsored, authorized, licensed or are otherwise connected to or affiliated with the John and Jane Doe Defendants.

229.    Upon information and belief, the John and Jane Doe Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill.

230.    As a direct and proximate result of the John and Jane Doe Defendants' willful and unlawful conduct, Plaintiffs have been injured and will continue to suffer injury to their business and reputation unless the John and Jane Doe Defendants are restrained by this Court from infringing Plaintiffs' Registered Trademarks.

231.    Plaintiffs have no adequate remedy at law.

232.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting the John and Jane Doe Defendants from using Plaintiffs' Registered Trademarks or any marks identical and/or confusingly similar thereto, for any purpose, and to recover from the John and Jane Doe Defendants all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by the John and Jane Doe Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

### THIRD CAUSE OF ACTION

**FEDERAL TRADEMARK DILUTION AGAINST
JOHN AND JANE DOE DEFENDANTS
15 U.S.C. § 1125(C)**

233.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

234.    Plaintiffs are the exclusive owners of their Registered Trademarks as set forth above.

235.    The John and Jane Doe Defendants' use of Plaintiffs' Registered Trademarks on the counterfeit goods they sell constitutes the John and Jane Doe Defendants' commercial use in commerce of Plaintiffs' Registered Trademarks.

236.    These marks have been used for years and are so globally recognized and associated with Plaintiffs that they are entitled to be recognized as famous and distinctive under 15 U.S.C. §1125(c).

237.    Plaintiffs' Registered Trademarks have come to have a secondary meaning indicative of origin, relationship, sponsorship and/or association with the Plaintiffs and their distinctive reputation for high quality. The purchasing public is likely to attribute to Plaintiffs the John and Jane Doe Defendants' use of Plaintiffs' Registered Trademarks as a source of origin, authorization and/or sponsorship for the products the John and Jane Doe Defendants sell, and further, purchase the John and Jane Doe Defendants' products in the erroneous belief that the John and Jane Doe Defendants are associated with, sponsored by or affiliated with Plaintiff, when they are not.

238.    Plaintiffs have not authorized or licensed the use of Plaintiffs' Registered Trademarks to the John and Jane Doe Defendants.

239.    The John and Jane Doe Defendants' unauthorized use of Plaintiffs' Registered Trademarks in their marketing, sale and distribution of counterfeit products are diluting the distinctive quality of the Plaintiffs' Registered Trademarks and the goodwill associated therewith in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c).

240.    Such conduct has injured Plaintiffs and that injury will continue unless the Court enjoins the John and Jane Doe Defendants from committing further wrongful acts.

241.    Upon information and belief, the John and Jane Doe Defendants intentionally and willfully utilized Plaintiffs' Registered Trademarks and traded on Plaintiffs' reputation and goodwill.

242.    Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts by the John and Jane Doe Defendants in an amount thus far not determined.

### FOURTH CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING AGAINST JOHN AND JANE DOE DEFENDANTS
### 15 U.S.C. §1125 (a)

243.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

244.    The John and Jane Doe Defendants have, in connection with their goods, used in commerce, and continue to use in commerce, Plaintiffs' Registered Trademarks.

245.    The John and Jane Doe Defendants have affixed, applied and used in connection with their sale of goods false designations of origin and false and misleading descriptions and representations, including the Plaintiffs' Registered Trademarks, which tend falsely to describe the origin, sponsorship, association or approval by Plaintiff of the goods sold by the John and Jane Doe Defendants.

246. The John and Jane Doe Defendants use one or more of the Plaintiffs' Registered Trademarks with full knowledge of the falsity of such designations of origin, descriptions and representations, all to the detriment of Plaintiffs.

247. The John and Jane Doe Defendants' use of Plaintiffs' Registered Trademarks on the counterfeit goods constitutes false descriptions and representations tending to falsely describe or represent the John and Jane Doe Defendants and their products as being authorized, sponsored, affiliated or associated with Plaintiffs.

248. The John and Jane Doe Defendants use one or more of Plaintiffs' Registered Trademarks on counterfeit goods with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high quality reputation of Plaintiffs and to improperly appropriate for themselves the valuable trademark rights of Plaintiffs.

249. The John and Jane Doe Defendants' aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent the John and Jane Doe Defendants' products as those of Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

250. The John and Jane Doe Defendants' wrongful acts will continue unless enjoined by this Court.

251. Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts in an amount thus far not determined.

## FIFTH CAUSE OF ACTION

### INJURY TO BUSINESS REPUTATION AGAINST
### JOHN AND JANE DOE DEFENDANTS
### NY GBL § 360-1

252.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

253.    Due to Plaintiffs' extensive sales and significant marketing and promotional activities, Plaintiffs' Registered Trademarks have achieved widespread acceptance and recognition among the consuming public throughout the United States.

254.    Plaintiffs' Registered Trademarks are arbitrary and distinctive and identify Plaintiffs as the source and origin of the goods on which Plaintiffs' Registered Trademarks appear.

255.    The John and Jane Doe Defendants have caused and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, in violation of New York General Business Law § 360-1.

256.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting the John and Jane Doe Defendants from using Plaintiffs' Registered Trademarks, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, and all gains, profits and advantages obtained by the John and Jane Doe Defendants as a result of their infringing acts alleged above in an amount not yet known as well as the costs of this action.

## SIXTH CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT AGAINST JOHN AND JANE DOE DEFENDANTS

257.   Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

258.   Plaintiffs own all right, title, and interest in and to Plaintiffs' Registered Trademarks, including all common law rights in those marks.

259.   The John and Jane Doe Defendants, without Plaintiffs' authorization, have used and are continuing to use spurious designations that are identical to, substantially indistinguishable from, or confusingly similar to Plaintiffs' Registered Trademarks.

260.   The John and Jane Doe Defendants' foregoing acts are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether the John and Jane Doe Defendants' goods originate from, are affiliated with, sponsored by, or endorsed by Plaintiffs.

261.   The John and Jane Doe Defendants' acts constitute trademark infringement in violation of the common law of the State of New York.

262.   Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of the John and Jane Doe Defendants' unlawful acts unless they are permanently enjoined from their unlawful conduct.

263.   Plaintiffs have no adequate remedy at law.

## SEVENTH CAUSE OF ACTION

### CONTRIBUTORY TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT AND FALSE DESIGNATIONS OF ORIGIN AGAINST DEFENDANT TAI FOOK, INC.

264.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

265.    The John and Jane Doe Defendants have committed direct acts of trademark counterfeiting, trademark infringement, use of false designations of origin and trademark dilution.  Counterfeit MK and Cartier merchandise has been displayed and offered for sale and sold by the John Does and Jane Does on the Property.

266.    At all relevant times, Tai Fook has had actual, specific knowledge that the John and Jane Doe Defendants and others were using the Property as a base of operation from which to sell counterfeit trademarked goods – including goods of inferior quality  –  that bear counterfeit versions of Plaintiffs' Registered Trademarks.

267.    Despite such direct and specific knowledge, Tai Fook has knowingly continued to permit and condone the John and Jane Doe Defendants' use of the Property as a base of operation from which to sell goods bearing counterfeit versions of Plaintiffs' Registered Trademarks.

268.    Tai Fook has turned a blind eye to the activities of the John and Jane Doe Defendants on their Property, creating a safe haven and marketplace from which counterfeit goods bearing Plaintiffs' Registered Trademarks are routinely sold.

269.    Tai Fook receives direct financial benefit through the lease of the Property.

270.    At all relevant times, Tai Fook has had the ability to prevent others from using the Property as a base from which to sell goods bearing counterfeit versions of Plaintiffs' Registered Trademarks yet Tai Fook has neglected to do so.

271.    Despite having this ability, Tai Fook has repeatedly failed to take reasonably adequate measures to ensure that the Property is not used by sellers of counterfeit goods.

272.    Tai Fook has provided the John and Jane Doe Defendants with the means and instrumentality necessary to sell counterfeit goods from the Property and has benefited from the sale of counterfeits.

273.    Acting with the foregoing actual and constructive knowledge, Tai Fook has enabled, facilitated, perpetuated and materially contributed to the John and Jane Doe Defendants' unlawful acts.

274.    Tai Fook is contributorily liable to Plaintiffs for its participation in the unlawful acts of the John and Jane Doe Defendants.

275.    The counterfeiting of Plaintiffs' Registered Trademarks is to the great and irreparable damage of Plaintiffs and Plaintiffs believe, as indicated, that Tai Fook will continue to benefit from counterfeiting activities unless enjoined by this Court.

276.    Tai Fook's activities are likely to lead to and result in confusion, mistake or deception and are likely to cause the public to believe that Plaintiffs have produced, sponsored, authorized, licensed or are otherwise connected or affiliated with Tai Fook's commercial and business activities, all to the detriment of Plaintiffs.

277.    As a result of Tai Fook's willful and unlawful conduct, Plaintiffs have been injured and will continue to suffer injury to their businesses and reputations unless Tai Fook is restrained by this Court.

278.    Tai Fook's acts have damaged and will continue to damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

279.    In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Tai Fook from enabling the sale of counterfeit merchandise bearing the Plaintiffs' Registered Trademarks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Tai Fook all damages, including attorneys' fees that Plaintiffs have sustained and will sustain.

280.    As a result of such infringing acts, Plaintiffs are entitled to all gains, profits and advantages obtained by Tai Fook as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## EIGHTH CAUSE OF ACTION

### PRIVATE RIGHT OF ACTION AGAINST TAI FOOK, INC.
### N.Y. REAL PROP. L. § 231

281.    Plaintiffs repeat and reallege the allegations of the previous paragraphs as though fully set forth herein.

282.    The manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks is an unlawful trade or business under New York law.

283.    Tai Fook has knowingly leased or given possession of the Property to be used or occupied, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

284.    Tai Fook has knowingly permitted the Property to be used, in whole or in part, for the manufacture, distribution, sale or offer for sale of goods bearing counterfeit trademarks.

285.    By reason of the foregoing, pursuant to N.Y. Real Prop. L. § 231(2), Tai Fook is jointly and severally liable to Plaintiffs for all damages resulting from the unlawful trademark counterfeiting activities of the John and Jane Doe Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court enter judgment against Defendants as follows:

### *Against the John and Jane Doe Defendants:*

A.    Granting temporary, preliminary and permanent injunctive relief restraining John Doe and John Doe Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

(1)    Using Plaintiffs' Registered Trademarks or any marks confusingly similar thereto, in connection with the manufacturing, distribution, advertising, offering for sale, and/or sale of merchandise;

(2)    Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of the John and Jane Doe Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with, Plaintiffs;

(3)    Otherwise infringing upon Plaintiffs' Registered Trademarks;

(4)     Otherwise diluting Plaintiffs' Registered Trademarks;

(5)     Unfairly competing with Plaintiffs; and

(6)     Leasing or subleasing space to any tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of products that bear Plaintiffs' Registered Trademarks, or any other marks confusingly similar to substantially similar thereto;

B.     Awarding Plaintiffs all of John and Jane Doe Defendants' profits and all damages sustained by Plaintiffs as a result of John and Jane Doe Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

C.     Awarding treble damages in the amount of John and Jane Doe Defendants' profits or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

D.     Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b); and

E.     Awarding Plaintiffs statutory damages pursuant to 15 U.S.C. §1117(c).

***Against Defendant Tai Fook, Inc.,***

A.     Granting temporary, preliminary and permanent injunctive relief restraining Tai Fook, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from leasing or subleasing space to any tenant who is engaged in the manufacturing, purchasing, production, distribution, circulation, sale, offering for sale, importation, exportation, advertisement, promotion, display, shipping, or marketing of

products that bear Plaintiffs' Registered Trademarks, or any other marks confusingly similar to or substantially similar thereto; and

B.      Finding Defendant Tai Fook, Inc., contributorily liable for the John and Jane Doe Defendants' counterfeiting of Plaintiffs' Registered Trademarks and for any damages resulting from the John and Jane Doe Defendants' activities complained of herein, including, but not limited to, actual damages, statutory damages, treble damages, interest, costs, disbursements and attorneys fees.

*Against all Defendants*

A.      Awarding actual damages suffered by Plaintiffs as a result of Defendants' acts;

B.      Ordering an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

C.      Ordering Defendants to disgorge their profits;

D.      Awarding Plaintiffs punitive damages in connection with their claims under New York law; and

E.      That the Court award Plaintiffs such other and further relief as it deems proper.

Dated: New York, New York
      March 23, 2015

**BAKER & HOSTETLER LLP**

By: _Heather J. McDonald_

Heather J. McDonald (HM 3320)
Robertson D. Beckerlegge (RB 1829)
45 Rockefeller Plaza
New York, New York  10111
(212) 589-4200
(212) 589-4201 - Fax
Counsel for Plaintiffs
Michael Kors, LLC;
Cartier International AG; and
Cartier, a division of Richemont North America, Inc.

606017908.6